**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**LINDA D. McGUIRE[1],**

      **Plaintiff,**

**vs.**                     **Case No. 1:23CV106-AW-MAF**

**MARTIN J. O'MALLEY,
Commissioner of Social Security[2],**

      **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

This cause is before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Period of Disability and Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI). After careful consideration of the record, for the reasons stated below, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

---

[1] Plaintiff divorced and remarried during the pendency of her proceedings. Her surname is as reflected above.

[2] Martin O'Malley was nominated by President Biden to be Commissioner of the Social Security Administration and, following confirmation by the U.S. Senate, was sworn into office December 20, 2023. The Clerk of Court is directed to correct the docket to reflect Defendant's name.

## I.    Procedural History

Plaintiff's underlying claim has been pending for nearly eight years and was subjected to several layers of review at the district court and administrative level.

Plaintiff filed an application for Period of Disability and Disability Insurance Benefits on August 23, 2016, alleging she became disabled beginning July 27, 2016. Tr. 192-98.[3] That application was denied initially and on reconsideration. Tr. 113-17; 119-21. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (Tr. 122-23), which hearing was held on June 19, 2018, before ALJ James Grimes.    Tr. 46-86.    ALJ Grimes issued an unfavorable decision on November 20, 2018 (Tr. 10-20), and the Appeals Council denied review.    Tr. 1-3.    Plaintiff appealed, and the District Court reversed and remanded the proceedings, finding that Plaintiff's moderate limitation in the area of concentration, persistence, and maintaining pace was not adequately accounted for in the residual functional capacity (RFC), nor was Plaintiff's allegation regarding difficulty paying attention.    Tr. 899.    Ultimately, the Court concluded that ALJ Grimes failed to properly explain how the evidence supports the conclusion that Plaintiff

_____

[3] References to the record in this case will be to "Tr." followed by the relevant page number.

2

can sustain work for a full eight-hour day.   Tr. 1013.   On remand, the Appeals Council ordered a new hearing, Tr. 1017-19, also noting that Plaintiff had subsequently applied for Supplemental Security Income, and ordered the new ALJ to consolidate Plaintiff's two claims.   Tr. 1019; 1265-75.

Thereafter, a telephonic hearing was held on March 16, 2022, by agreement because of the COVID 19 pandemic.   Tr. 936-67.   A different ALJ, Joseph T. Scruton, presided.   Tr. 938.   Plaintiff appeared through counsel, Amy Hansen Geddes, and testified on her own behalf.   Tr. 940; 950-61.   Diana Sims, an impartial vocational expert (VE) also testified by telephone.   Tr. 962-66. ALJ Scruton issued a partially favorable decision on June 2, 2022, finding that Plaintiff became disabled on November 19, 2020, but she was not disabled prior to that date (from July 27, 2016 through November 18, 2020). Tr. 899-920. The Appeals Council denied Plaintiff's request for review on March 8, 2023. Tr. 885-89.

Through counsel, Plaintiff filed her complaint with this Court on May 3, 2023.   ECF No. 1.   Plaintiff filed a Motion for Summary Judgment and memorandum in support of her position on September 29, 2023.   ECF Nos. 16, 17.   The Commissioner filed a responsive memorandum in support of the Commissioner's position on November 29, 2023.   ECF No. 20.   This matter is ripe for review.

3

## II.   Issues Presented

Plaintiff's Complaint and Motion and Brief in Support of Summary Judgment, Plaintiff presents the following issues for review:

(1)  The ALJ's assessment of Plaintiff's mental impairments under SSR 96-8p is not supported by substantial evidence.

(2)  The ALJ's assessment of Plaintiff's impairments and physical findings are not supported by substantial evidence.

(3)   The ALJ's assessment of Plaintiff's allegations is not supported by substantial evidence.

ECF No. 17, pp. 13, 20, 23.   As these are the only issues presented, the Court will limit its review of the ALJ opinion and record to these matters.

## III.   Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 at 1239 (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th

Cir. 2005).[4]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in

---

[4] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

McGuire v. O'Malley, Case No. 1:23CV106-AW-MAF

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairments?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.    Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[5]

---

[5] An RFC is the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in

6

5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating he cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

_____

light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered his decision. See generally, Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), adopted, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

McGuire v. O'Malley, Case No. 1:23CV106-AW-MAF

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. As the finder of fact, pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2), the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ must evaluate all the medical opinions of record and resolve conflicts that might appear. 20 C.F.R. § 404.1527.

The Regulations set forth three tiers of sources for medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. Himes v. Comm'r of Soc. Sec., 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). While an ALJ must usually give substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor—such as a doctor who performs a consultative examination— merits no such deference. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) ). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical

findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "Because much of the rationale underlying the treating physician rule involves the physician's familiarity with his patient, it does not apply to a physician who bases his opinion of a claimant's limitations upon a single visit" or mere review of records. See Swann v. Astrue, No. 3:07cv129/LAC/EMT, 2008 WL 818500, at *8 (N.D. Fla. March 26, 2008) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir.1986)). An examining doctor's opinion, however, is usually accorded greater weight than that of a non-examining physician. Huntley v. Soc. Sec. Admin., Comm'r, 683 F. App'x 830, 832 (11th Cir. 2017) (citing Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985)).

Because Plaintiff filed her application for benefits *before* March 27, 2017, the treating physician rule applies in this case.[6] An ALJ is required to give the treating physician's opinion "substantial or considerable weight unless 'good cause' was shown to the contrary." Phillips, 357 F.3d at 1240-

---

[6] In 2017, the Commissioner issued a new regulation, 20 C.F.R. 1520c, which abrogated the "treating physician rule." Harner v. SSA, Comm'r, 38 F.4th 892, 896 (11th Cir. 2022). But this new rule only applies to SSI and disability insurance applications filed *after* March 27, 2017.

41 (citing <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records."    <u>Schink v. Comm'r of Soc. Sec.</u>, 935 F.3d 1245, 1259 (11th Cir. 2019). If the decision of the ALJ is explained and relies on evidence in the record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." <u>Hunter v. SSA Comm'r</u>, 808 F.3d 818, 823 (11th Cir. 2015). Further, where a treating physician has merely made conclusory statements, the ALJ may afford them greater weight only to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986).

Moreover, opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); <u>see</u> <u>Bell v. Bowen</u>, 796 F.2d 1350, 1353-54 (11th

10

Cir. 1986); "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."   SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996; rescinded eff. Mar. 27, 2017).   Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC.

Additionally, to establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson, 284 F.3d at 1225 (citing Holt v. Sullivan, 921 F.3d 1221, 1223 (11th Cir.1991)).

An ALJ may reject complaints of pain as not credible, but that finding will be reviewed to determine if it is based on substantial evidence. Moreno v. Astrue, 366 F. App'x 23, 28 (11th Cir. 2010) (citing Marbury v. Sullivan, 957 F.2d 837, 839   (11th Cir.1992). If an ALJ discredits the subjective testimony of a plaintiff, he must "articulate explicit and adequate reasons for doing so. [citations omitted]. Failure to articulate the reasons for discrediting

11

McGuire v. O'Malley, Case No. 1:23CV106-AW-MAF

subjective testimony requires, as a matter of law, that the testimony be accepted as true." <u>Wilson</u>, 284 F.3d at 1225. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir.1995)). The court can rely on discrepancies in claimant's descriptions of daily life and claims of infirmity to evaluate the claimant's credibility. <u>Moore</u>, 405 F.3d at 1212 (ALJ's negative credibility determination because Plaintiff could drive, provide childcare, bathe, and take care of herself, and do housework).

## IV.  ALJ Scruton's Findings

In his order, ALJ Scruton properly articulates and follows the five-step sequential evaluation process for determining whether an individual is disabled.  Tr. 900-01.  <u>See</u> 20 CFR § 404.1520(a) and 416.920(a).  In doing so, ALJ Scruton made the following findings (finding in bold):

1.  **The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.** This fact is not in dispute.

2.  **The claimant has not engaged in substantial gainful activity since July 27, 2016, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).** This fact is not in dispute.

12

3.    **Since the alleged onset date of disability, July 27, 2016, the claimant has had the following severe impairments:  fibromyalgia, degenerative disc disease with radiculopathy, obesity, and depression (20 CFR 404.1520(c) and 416.920(c)).** This fact is not in dispute.

4.    **Since July 27, 2016, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**   Tr. 904. This fact is in dispute.

While ALJ Scruton found that Plaintiff suffers from severe impairments, he concluded that none of them met the criteria of any listed impairment. With respect to Plaintiff's degenerative disc disease, ALJ Scruton confirmed that Plaintiff's condition did not meet the requirements of Listing 1.15 (compromise of a nerve root) because Plaintiff regularly had a normal gait, and the record did not show that Plaintiff required any assistive device.   Tr. 904.   Similarly, as required by Ruling 19-2p, ALJ Scruton contends he considered Plaintiff's obesity in reaching his RFC conclusions. Id.

With respect to Plaintiff's claimed fibromyalgia, ALJ Scruton found that Plaintiff's longitudinal records do not impose the limitations described in listings 1.15, 1.16, 1.18 or 1.21.   Tr. 905.   First, Plaintiff does not have

McGuire v. O'Malley, Case No. 1:23CV106-AW-MAF

extreme limitations in the ability to perform fine and gross movements or in her ambulation.  Id.  Second, Plaintiff's fibromyalgia does not have the features of a connective disorder as referenced in 14.02 (systemic lupus erythematosus), 14.04 (systemic sclerosis and scleroderma) or 14.06 (undifferentiated and mixed connective tissue disease), which are the Listings considering the signs and symptoms discussed in SSR 12-2p. Third, Plaintiff's fibromyalgia is not of listing level severity even when considered together with Plaintiff's other medically determinable impairments.

ALJ Scruton also concluded that Plaintiff's mental impairments also do not meet or medically equal the criteria of listings 12.04 and 12.06 when considered singly and in combination.  Tr. 905.  In reaching that conclusion, ALJ Scruton considered whether Plaintiff had one extreme or two marked limitations in designated broad areas of functioning.

Plaintiff had only moderate limitations with respect to understanding, remembering, or applying information.  Plaintiff does not require reminders to care for her personal needs, but she relies on her husband, who provided her with a pill box, to remind her to take her medication.  Tr. 234.  Plaintiff reported she has difficulty remembering spoken instructions, but was able to follow written instructions.  Tr. 237; 1368.  Plaintiff reported she had some

difficulty understanding information, but she was able to pay her bills, count change, handle a savings account and use a checkbook (Tr. 235-36; 1366-67), suggesting no more than a moderate limitation.   While Plaintiff's providers did not report significant examination abnormalities regarding Plaintiff's memory, they did note mild to moderately impaired insight and judgment between 2017 and 2018.   Tr. 906.   Based on Plaintiff's reported symptoms and variable mood and affect, ALJ Scruton found that Plaintiff had a moderate limitation in her ability to understand, remember and apply information, concluding that she should be limited to simple, routine tasks and short, simple instructions.   Id.

ALJ Scruton also concluded that Plaintiff had mild limitations with respect to her ability to interact with others.   Plaintiff was pleasant, cooperative and in no distress when interacting with her practitioners.   Tr. 462; 776; 807-12; 839-41; 187; 1873-74.   He notes that while Plaintiff reported some difficulty being around others, she also spent time with others, talked on the phone with her mother daily, shopped in stores, and went outside a few times a day.   Tr. 232-39; 1362-70.   Because Plaintiff reports that she keeps to herself and has variable mood and affect, ALJ Scruton limited Plaintiff to work environments where only occasional interaction with the public, coworkers and supervisors might be required.   Tr. 906.

ALJ Scruton found that Plaintiff faced moderate limitations with regard to concentrating, persisting, and maintaining pace.  Id.  Plaintiff reported she watched television and read – suggesting she had some capabilities in these areas – but she also reported that she was only able to pay attention for a short period of time and had difficulty finishing what she started.  Tr. 236 (enjoys reading and watching television); 237 (can pay attention for 20 minutes; trouble finishing what she starts); 1367 (reads and watches television); 1368 (pays attention for 5 minutes; can finish what she starts but takes a long time because she loses focus).  Plaintiff was able to focus and participate during both of her disability hearings.  Tr. 907.  ALJ Scruton concluded that Plaintiff's difficulty concentrating and variable mood and affect would limit Plaintiff to simple, routine tasks and short, simple instructions (non-complex tasks and instructions) with ordinary scheduled breaks, while also allowing her to fall off task for up to 5% of the workday. Despite her moderate limitation, ALJ Scruton concluded Plaintiff could complete a normal 8-hour workday and 40-hour workweek consistent with her RFC.  Id.

ALJ Scruton found that Plaintiff was only mildly limited with respect to self-care needs.  Id.  While she relies on her husband for assistance, and she has experienced some muscle pain, numbness and balance issues, she

also reported being able to perform household chores (folding clothes, cleaning up after pets) even with pain and fatigue.   Tr. 234-237; 1364-68. Restricting Plaintiff to work environments that present routine situations and routine changes would provide for her mild limitation in adaptation, and restricting her interaction with others would accommodate for her mild limitation in managing herself.   Tr. 907-08.

Because ALJ Scruton did not find that Plaintiff's mental impairments caused at least two "marked" limitations or one "extreme" limitation, the Paragraph "B" criteria were not satisfied here.   Tr. 908.   Similarly, the Paragraph "C" criteria were not satisfied because Plaintiff has the minimal capacity to adapt to changes in her environment or changes that are not already part of her daily life.   There was no evidence that changes or increased demands led to a deterioration of Plaintiff's functioning; and Plaintiff was able to function outside the home or a more restrictive setting without substantial psychosocial supports.   Id.

5.   **After careful consideration of the entire record, [ALJ Scruton] finds that since July 27, 2016, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot crawl or climb ladders or scaffolds.   She can occasionally climb steps or stairs,**

17

**kneel, crouch, or stoop.   She can frequently, but not constantly, reach, handle and finger bilaterally.   She can have no exposure to vibratory surfaces.   The claimant's concentration, persistence, and maintaining of pace is adequate for performing simple, routine tasks and completing short, simple instructions (non-complex tasks and instructions).   She requires ordinary scheduled breaks at approximately two-hour intervals, but may fall off task up to 5% of the workday apart from ordinarily scheduled breaks.   She can have occasional interactions with others (public, coworkers, and supervisors).   She must work in a setting presenting routine situations and routine changes.** This fact is in dispute.

According to ALJ Scruton, Plaintiff alleged she was unable to work primarily because of her fibromyalgia, resulting in Musculoskeletal pain, accompanied by fatigue and low back pain.   Tr. 909.   Plaintiff reported back pain radiating into her feet; numbness in her hands, arms, and feet; that she experiences back pain after standing for 5 minutes; and, migraines, cognitive issues, memory loss and depression.   Id.; Tr. 1363; 1368   According to Plaintiff, she last worked in 2016, and was sleeping on her breaks due to fatigue, resulting in recurring absences. Tr. 63; 241-242. She had crying spells once per week, along with panic attacks, which worsened with stress.

Tr. 78; 1369   She gained 50 pounds since she stopped working (she was 5'2" and weighed 200 pounds at the time of the first hearing).   Tr. 77.

Plaintiff was evaluated for multiple sclerosis, but it was ultimately determined by her neurologists that Plaintiff was continuing to suffer from fibromyalgia.   Tr. 64; 950-51.   Plaintiff testified at hearing that she: continued to have headaches, back pain, and difficulty holding items with one hand;  had hand shaking, and trouble typing and writing; avoided people and mostly stayed at home; and had pain and fatigue that limited her ability to perform household chores, requiring her to lie down for up to an hour a day.   Tr. 65-74; 958-59.

According to ALJ Scruton, Plaintiff's medical records documented evidence of fibromyalgia – severe musculoskeletal pain (including back pain radiating to the lower extremities); chronic back pain; muscle weakness; and difficultly in walking, sitting, or standing for prolonged periods of time. Records from the Chiropractic Care Center from August 2017 confirm that Plaintiff reported that she had fibromyalgia with constant body pain, difficulty walking after standing or sitting too long.   Tr. 826.   However, the objective portion of that same report states that at the time of the examination, Plaintiff was within normal limits, except she experienced some pain at end range with respect to flexion, extension, and right lateral bend.   Tr. 826-27.

Reports from Lewis Gale Medical Center from October 12, 2017, noted Plaintiff's complaints of low back pain radiating to her lower extremities, accompanied by numbness, tingling and weakness.   Tr. 780.   Plaintiff was assessed with lumbar radiculopathy, with physical examination reflecting evidence of tenderness to the lumbar spine.   Tr. 781.   However, Plaintiff maintained normal range of motion in the pelvis/hips bilaterally, and 5/5 motor functioning in the bilateral extremities, except right plantar flexion 5-/5, 2/4 patellar reflect, and 2/4 ankle reflex, with steady sensory deficit on the right S1.

Reports from 2017 and 2018 confirm that Plaintiff continued to complain about back pain radiating to her lower extremities.   Tr. 842. However, according to ALJ Scruton, Plaintiff's physical examinations continued to be unremarkable, with her treatment remaining conservative, consisting of no more than physical therapy.   Tr. 910.   Plaintiff's records as of January 2, 2018, reveal no clubbing, cyanosis, or edema.   Tr. 768. Additionally, while the records document back and lower extremity pain which was aggravated by movement, reports from 2018 reflect improvement to Plaintiff's condition.   Tr. 858-60; 864.

After a motor vehicle accident in May 2020, Plaintiff went to an urgent care provider, complaining of neck pain, headache, and back pain.   Tr.

1547.   While Plaintiff reported she had 10/10 pain on a daily basis because of her fibromyalgia, she somehow reported her pain was worse after the accident.   Id.   Plaintiff had tenderness and spasm along the spine, but x-rays of her lumbar spine were normal.   Id.   She was prescribed Toradol and Flexeril.   Tr. 1551.

Plaintiff also visited her neurologist following her motor vehicle accident in May 2020. Tr. 1685-87. Her CT scan showed only mild anterolisthesis at C4-C5, and an MRI of her cervical spine showed no significant stenosis. Tr. 1685. Plaintiff had normal motor strength, sensation, and reflexes. Tr. 1686. Plaintiff received trigger point injections and a prescription for physical therapy. Id. At her six-week follow-up, Plaintiff reported the trigger point injections only held for a couple of days, but she felt physical therapy was helping, as was the use of muscle relaxers at night. Tr. 1682. Physical examination showed normal strength, sensation, and reflexes, with full range of motion with some spasms and pain in the cervical/thoracic spine. Tr. 1683.

Plaintiff followed up with a neurologist at Wake Forest in June 2020 regarding ongoing headaches and migraines.   Tr. 1828.   Plaintiff reported mild headaches "every so often" and migraines 1-2 times in the last 6 months.   Id.   Plaintiff reported an improved mood after talking with a

21

psychologist, and denied any side effects from the medication she was taking for her headaches.   Tr. 1833.   Her headaches were under "excellent control."   Tr. 1842.

Plaintiff established a new primary care physician for her chronic conditions in September 2020. Tr. 1587-92. Plaintiff recounted her history of headaches and migraines and reported her medications (Topamax and Aimovig) helped, limiting her migraines to once per month. Tr. 1587. Plaintiff also reported her Cymbalta and muscle relaxers helped with her fibromyalgia.  Id.  Plaintiff's physical examination was unremarkable.   Tr. 1589-90.   At her three-month follow-up Plaintiff reported that colder weather and her car accident aggravated her fibromyalgia. Tr. 1583. Plaintiff had some tenderness to palpation in her upper back, and her physician increased her muscle relaxer in response. Tr. 1585. Plaintiff continued with her primary care physician for treatment of her chronic conditions. Tr. 1745-85.

ALJ Scruton concluded that Plaintiff was able to perform the physical demands of sedentary work, while she could never climb ladders or scaffolds; never crawl; occasionally climb ramps or stairs, stoop, kneel or crouch; and can have occasional exposure to hazards or vibration.   Tr. 912.

Plaintiff reported symptoms related to major depression along with panic attacks which she contends caused difficulty in interacting with others

22

and handling complex tasks.   Id.   However, ALJ Scruton does not believe the records support the level of mental health limitations alleged by Plaintiff. From 2017 through 2018, Plaintiff sought care from Klaire T. Mundy, Psy.D, and expressed feelings of depression and lack of self-worth, with crying spells, panic attacks and difficulty with interpersonal communication.   Tr. 776; Tr. 807-12; 840; 1871.   Despite these complaints, Plaintiff's mental health evaluations were all within normal limits, except for a mild or moderate difficulty with her judgment or insight.   Plaintiff's symptoms were apparently due to her relationship issues with her husband or her physical condition as opposed to a long-standing mental health condition.   Id.; Tr. 1830.

Even so, Plaintiff reported moderate to good progress in improving her mental health conditions as a result of supportive counseling.   There was no evidence of a deterioration of her mental condition, with claimant reporting throughout 2018 that her communication with her husband was improving. Tr. 840; 1871.   There was no further recommendation for treatment outside of supportive counseling and engagement in mindful practice and breathing, suggesting her condition was not as severe as reported.   She generally reported normal findings when treating with others, including her primary care provider and neurologist.   Tr. 1433; 1436; 1443; 1475; 1585; 1587; 1596; 1683; 1745; 1753; 1830.

ALJ Scruton limited Plaintiff to occasional interaction with others because of Plaintiff's mental impairment, including her difficulty with social interaction, handling complex tasks, and mild to moderate difficulty with her insight and judgment referenced in 2017/18.    Tr.  912.    Plaintiff's concentration, persistence, and maintaining pace is adequate for following short, simple instructions and completing simple, routine tasks.    Id.    Plaintiff will also be provided with ordinarily scheduled breaks, and be expected to fall off task 5% of the workday.    ALJ Scruton also found that Plaintiff should be limited to work environments presenting routine situations and changes.

As required by SSR 12-2P, ALJ Scruton considered the treatment of Plaintiff's fibromyalgia, recognizing that Plaintiff experiences some pain and discomfort.    Id.    However, ALJ Scruton did not believe her conditions precluded the performance of sustained work activity.    "Mild to moderate pain or discomfort is not, by itself, incompatible with the performance of sustained work activity."    Tr.  913.    ALJ Scruton concluded that while Plaintiff has impairments which are reasonably expected to produce the pain and discomfort, he did not believe the medical evidence supported the severity alleged by Plaintiff.    Id.

According to ALJ Scruton, in considering Plaintiff's longitudinal treatment records the evidence does not document repeated manifestations

or reports of fatigue or other symptoms. Plaintiff reported feeling well at office visits; described participating in activities suggestive of greater abilities than now contended; and reported her symptoms were controlled with Cymbalta and muscle relaxers. ALJ Scruton believes the restrictions reflected in the RFC would accommodate Plaintiff's impairments.   Tr. 913-14.

Supporting that decision are the medical opinions offered by Plaintiff's treating professionals and state agency consultants.   The state agency consultants included the following professionals:

1.    Nicholas Tulou, M.D. – after reviewing Plaintiff's medical evidence of record, Dr. Tulou opined that Plaintiff could perform light exertion work with frequent postural activities, only occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, and no concentrated exposure to vibration or hazards.   Tr. 94-96.

2.    James Buston, M.D. – after conducting his own review of Plaintiff's medical record he reached a similar conclusion.   Tr. 107-08.

3.    Joseph Duckwall, MD. – in reviewing Plaintiff's consolidated Title II and Title XVI claims, Dr. Duckwall opined that Plaintiff could perform light exertional work with occasional postural activities, including frequent stooping and climbing ramps or stairs and occasional climbing of ladders, ropes or scaffolds.   Tr. 1053-55; 1072-74.

4.    Daniel Walter, Psy.D – state agency psychologist examined Plaintiff's medical evidence of record and opined that Plaintiff had mild restrictions or limitations with respect to activities of daily living; social functioning; and, concentration, persistence and pace.   Tr. 93.

5.    Streeja Kadakkal, M.D. – with respect to the consolidated claims, Dr. Kadakkal opined that Plaintiff had mild restrictions in all areas.   Tr. 1051; 1070-71.

ALJ Scruton recognizes that agency consultants are non-examining witnesses whose opinions are not entitled to the same weight as treating or examining physicians.   Tr. 915.   Nonetheless, such opinions are entitled to some weight, especially in light of the consultant's high level of understanding of the SSD program and the broad scope of the review provided.   Id.   ALJ Scruton found that the record confirms Plaintiff had routine and conservative treatment for her mental and physical impairments, consisting generally of medications and routine follow-ups.   There was noted tenderness or spasm, but Plaintiff's gait, strength and sensation were intact. Similarly, her mental health examinations reflected some mood and affect issues, but most of those mental health findings were within normal limits.   ALJ Scruton afforded the opinions of the agency consultants some weight because they relied on cited relevant portions of Plaintiff's record and were somewhat consistent with the overall record.   Id.   However, because those consultants had no treating or examining relationship with Plaintiff, they were not afforded more weight.   Plaintiff's testimony and regular complaints of pain to her treating physicians led ALJ Scruton to restrict Plaintiff to sedentary exertion with the restrictions reflected in the RFC.

An examining professional, Kathleen Fuchs, Ph.D opined that Plaintiff had the ability to drive and manage her activities of daily living, and had the

"cognitive capacity to function in the workforce" but her "mood issues or fatigue could compromise her ability to do so." Tr. 465. ALJ Scruton afforded some weight to Dr. Fuchs' opinion because while she was not a treating professional, Dr. Fuchs was a specialist and had an opportunity to thoroughly examine Plaintiff. Tr. 915. According to Dr. Fuchs, Plaintiff:   was of average baseline intellectual abilities; struggled with consistency on a measure of attention; showed good sustained and selective attention on an alternate task; Plaintiff's processing speed was within normal limits, and she demonstrated intact abilities and language, visual construction, problem-solving, learning, and memory; struggled with visual material, but was able to retain and recognize what she had learned.   Dr. Fuchs recognized that Plaintiff's mood indicated at least a mild level of depression as well as concern about her physical symptoms.   Tr. 916.   ALJ Scruton believed that Dr. Fuchs' opinion was generally consistent with the record and was therefore entitled to some weight. However, because ALJ Scruton found the opinion was vague with respect to specific functional limitations, and relied on Plaintiff's subjective reports relating to physical impairments and limitations (as opposed to her mental impairments and limitations), the opinion was beyond the scope of Dr. Fuchs' specialty.   The opinion was therefore not entitled to greater weight.   Id.

ALJ Scruton also considered the opinion of Plaintiff's treating psychologist, Klaire Mundy, Psy.D.   Dr. Mundy opined:

> [Plaintiff] appears to be physically and psychologically compromised to the point that at times, she is unable to leave her home in order to attend medical/therapy appointments.   Given her ongoing struggles with her neurological and spinal pain, it is likely that her physical and emotional statues (sic) will be further impacted and the likelihood of her engaging in consistent pattern of employment is highly unlikely at this time."

Tr. 776.   ALJ Scruton afforded this opinion with little weight.   Tr. 916.

While Plaintiff agreed to biweekly treatment, she only attended six sessions over the course of six months, often cancelling her appointments because of physical ailments and depression.   Id.; 776.   When she commenced her treatment in October 2017 with Dr. Mundy, Plaintiff identified her relational problems with her husband as an area of concern. Tr. 812.   At that time, Plaintiff was well groomed and cooperative; had a tense motor activity; had a depressed and anxious mood, and an expansive affect; had pressured speech, and her thought process was tangential; her thought content was appropriate, and she was fully oriented; and she had moderately impaired judgment and insight, but her memory was intact.   Id.

At her next visit, Plaintiff's mental health findings improved.   Tr. 811. While she had an anxious mood, she had appropriate affect and her speech and thought process were normal; her insight and judgment also improved

28

to minimal impairment.  Id.  By her fourth visit, Plaintiff had a euthymic mood and her only objective examination abnormality was a minimal impairment in insight and judgment; she even reported positive improvement in her relationship with her husband.   Tr. 809.

ALJ Scruton concluded that Dr. Mundy's opinion was not supported by her examination findings and treatment, and was inconsistent with Plaintiff's overall record which shows minimal mental health treatment.   Tr. 916-17. Further Dr. Mundy stopped treating Plaintiff in the summer of 2018, one year after commencement, and it does not appear that Plaintiff established care with any other specialized mental health provider thereafter.   Id. Ultimately, he concluded that the proposed RFC is supported by the objective medical evidence of record, Plaintiff's daily activities, and the opinions of Dr. Fuchs and the state agency physicians and psychologists.   Tr. 917.

6.    **Since July 27, 2016, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965)**. This fact is not in dispute.

7.    **Prior to the established disability onset date, the claimant was a younger individual age 45-49.   On November 19, 2020, the claimant's category changed to an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).** This fact is not in dispute.

8.    **The Claimant has at least a high school education (20 CFR 404.1564 and 416.964).** This fact is not in dispute.

9.    **Prior to November 19, 2020, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on November 20, 2020, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P.** This fact is not in dispute.

Because Plaintiff would be limited to unskilled work there would be no transferrable job skills required to perform such jobs.

10.    **Prior to November 19, 2020, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416969a).** This fact is in dispute.

Because ALJ Scruton found that Plaintiff's ability to perform all of the requirements of this level of work was impeded by her impairments, he had to then determine whether jobs existed in the national economy for an

individual with Plaintiff's age, education, work experience and residual functional capacity.   Tr. 918.   Diana Sims, the impartial vocational expert testified that persons with Plaintiff's limitations and restrictions would be able to perform the requirements of representative occupations, including:

| Job Title | Dictionary Of Occupational Titles No. | Skill Level | Exertional Level | Number Of Jobs Nationally |
|-----------|----------------------------------------|-------------|------------------|----------------------------|
| Final Assembler | 713.687-018 | Unskilled SVP2 | Sedentary | 70,000 |
| Finisher | 631.687-014 | Unskilled SVP2 | Sedentary | 65,000 |
| Addresser | 209.587-014 | Unskilled SVP2 | Sedentary | 95,000 |

Id.; Tr. 963.   ALJ Scruton found that the VE's testimony was consistent with the Dictionary of Occupational Titles (DOT), and that the VE's testimony regarding off task rates and interaction did not conflict with the DOT and that such testimony was based on the VE's education and expertise and was credible.   TR. 918-19.   As a result, ALJ Scruton concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, she was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, and was therefore not disabled prior to November 19, 2020.   Tr. 919.

11. **Beginning on November 19, 2020, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).** This fact is not in dispute.

As required by application of Medical-Vocational Rule 201.14, a finding of disabled was required beginning on the date of Plaintiff's age category change.

12. **The claimant was not disabled prior to November 19, 2020, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).** The parties dispute whether Plaintiff was disabled prior to November 19, 2020.

ALJ Scruton ultimately concluded that, pursuant to sections 216(i) and 223(d) of the Social Security Act that based on Plaintiff's application for a period of disability and disability insurance benefits protectively tiled on August 23, 2016, the Plaintiff was disabled beginning on November 19, 2020. Additionally, ALJ Scruton concluded that based on Plaintiff's application for supplemental security income protectively filed on January 28, 2020, Plaintiff

32

was disabled under section 1614(a)(3)(A) of the Social Security Act beginning on November 19, 2020.

## V.   PLAINTIFF'S CLAIMS

### ALJ SCRUTON ERRED IN THE ASSESSMENT OF PLAINTIFF'S MENTAL IMPAIRMENTS

Plaintiff contends that ALJ Scruton erred in his determination that Plaintiff's disability did not commence until November 19, 2020.   ECF No. 17, p. 13.   Plaintiff believes the substantial evidence of record establishes plaintiff's disability commenced as of her alleged onset date of disability, July 27, 2016. Id., Tr. 919.

Plaintiff contends that ALJ Scruton failed to properly assess the impact of these limitations on Plaintiff's RFC.   ECF No. 17, p. 14.   In fact, ALJ Scruton failed to discuss in his decision how Plaintiff's moderate limitations are actually addressed or accommodated by the proposed RFC.   ALJ Scruton was required to consider Plaintiff's medical evidence as a whole, Dyer v. Barnhart, 395. F.3d, 1206, 1211 (11th Cir. 2005), and was required to perform a function-by-function analysis in determining Plaintiff's RFC, providing a narrative discussion describing how the evidence supports each conclusion in his decision.    See SSR 96-8p.   ALJ Scruton did not consider Plaintiff's medical evidence as a whole, and did not provide a function-by-function analysis or a proper narrative discussion regarding his conclusion

33

that his findings account for Plaintiff's moderate limitations. ECF No. 17, 16; Tr. 905-08. Plaintiff argues that ALJ Scruton was required to build a logical bridge between the evidence and his findings; instead, he recites evidence and then states his conclusions without explaining how he arrived at his conclusions. Id.

As a result, Plaintiff believes the Court is left to guess at how ALJ Scruton reached his conclusion that Plaintiff's moderate limitations are accommodated by simple, routine tasks and short, simple instructions in a setting with routine situations and routine changes. ALJ Scruton found Plaintiff has severe mental impairments that result in moderate limitations, but then does not explain how those limitations are accommodated by the RFC findings or provide a definition as to what he means by "routine situations" and "routine changes." Tr. 908.

Plaintiff also contends that ALJ Scruton's decision to only afford some weight to the opinions of Dr. Fuchs is not supported by substantial evidence. Dr. Fuchs opined Plaintiff's mood issues or fatigue could interfere with Plaintiff's ability to sustain work activity. ALJ Scruton improperly rejected this opinion, finding that it was based on Plaintiff's subjective reports as opposed to objective findings. Tr. 915-16. Plaintiff disagrees, arguing that Dr. Fuchs tested Plaintiff and clearly stated she based her opinions upon the objective

McGuire v. O'Malley, Case No. 1:23CV106-AW-MAF

testing she performed. Tr. 463.

Plaintiff also challenges ALJ Scruton's decision to give little weight to the opinions of Plaintiff's treating psychologist, Klaire Mundy. Tr. 916-17. Before the ALJ may reject a treating physician's opinions as inconsistent with other medical findings in the record, the ALJ is required to give specific reasons for rejecting a treating provider's opinion and must identify a "genuine inconsistency." Plaintiff claims that ALJ Scruton failed to identify genuine inconsistencies between the opinions of Dr. Fuchs and Dr. Mundy and the other medical findings in the record. Tr. 915-17.

In her letter of February 15, 2018, Dr. Mundy noted that Plaintiff canceled many of her sessions due to her physical ailments in combination with debilitating depression that left Plaintiff without the strength to leave her home and attend her therapy sessions. Tr. 776. Dr. Mundy stated that Plaintiff was engaged and motivated during the treatment period but opined that Plaintiff "appears to be physically and psychologically compromised to the point that at times, she is unable to leave her home in order to attend her medical/therapy appointments." Tr. 776. Dr. Mundy also opined that due to Plaintiff's "ongoing struggles" with her neurological and spinal pain, "it is likely that her physical and emotional statues (sic) will be further impacted and the likelihood of her engaging in a consistent pattern of employment is highly

McGuire v. O'Malley, Case No. 1:23CV106-AW-MAF

unlikely at this time." Tr. 776. In her treatment notes, Dr. Mundy documents Plaintiff's depressed/anxious mood at her therapy sessions. Tr.807; 811-12.

Plaintiff contends she had a history of mental health treatment including counseling and medications. ECF No. 17, p. 20. ALJ Scruton also ignores the fact that Dr. Mundy opined Plaintiff is both physically and psychologically compromised to the point that at times, she is unable to even leave her home to attend her medical or therapy appointments. Tr. 916-17. Dr. Mundy clearly states that Plaintiff's physical impairments in combination with her debilitating depression leave her without the strength to leave her home. Tr. 776. As was done with Dr. Fuchs' opinion, ALJ Scruton ignores the parts of Dr. Mundy's opinion that contradict his findings and misstates her opinions. ECF No. 17, p. 20; Tr. 916-917.

Simply limiting Plaintiff to simple, routine tasks and instructions with routine situations and changes and occasional interaction with others without further detailed explanation does not meet the requirements of SSR 96-8p and does not adequately address Plaintiff's moderate limitations in understanding, remembering, or applying information, or her moderate limitations in concentrating, persisting, or maintaining pace. According to Plaintiff, ALJ Scruton failed to build a logical bridge between the evidence and his RFC, and, consequently, his assessment of Plaintiff's mental

36

impairments is not supported by substantial evidence.

## ALJ SCRUTON ERRED IN THE ASSESSMENT
## OF PLAINTIFF'S FIBROMYALGIA PAIN

Plaintiff contends her fibromyalgia pain and migraines affect her ability to sit, stand, use her arms and hands, as well as her need to lie down during the day, are subjective complaints governed by the "pain standard" outlined in Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). ECF No. 17, p. 21. Plaintiff must show evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under 20 C.F.R. §§404.1529(c), 416.929(c), once Plaintiff satisfies this pain standard the Regulations require ALJ Scruton to then evaluate the intensity and persistence of the symptoms to determine how they limit Plaintiff's ability to work. Plaintiff argues that ALJ Scruton discounted Plaintiff's subjective complaints of pain and fatigue based largely on the lack of objective medical evidence substantiating her statements. Id.

Because fibromyalgia "often lacks medical or laboratory signs and is generally diagnosed mostly on an individual's described symptoms, the hallmark of this condition is a lack of objective evidence." Moore, 405 F.3d

37

at 1211. Given the subjective nature of fibromyalgia, physical examinations typically yield normal results and any undue emphasis on the lack of objective findings conflicts with the "well-established case law of this Circuit and constitutes error." Witherell v. Berryhill, 2019 WL 1397927, *4 (M.D.Fla. Mar. 28, 2010).

Plaintiff agrees with ALJ Scruton's finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and satisfied the first step of the symptom evaluation framework. Tr. 913.   However, Plaintiff contends ALJ Scruton improperly discredited Plaintiff's statements about the severity, persistence, and limiting effects of her symptoms because he did not find them to be consistent with the objective evidence. Tr. 909-11. By doing so, Plaintiff believes ALJ Scruton improperly increased Plaintiff's burden of proof by requiring her subjective descriptions of her symptoms to be supported by objective medical evidence and failed to consider fibromyalgia's unique characteristics when reviewing plaintiff's medical records, which conflicts with the well-established case law of this Circuit and constitutes error.   Id.

Plaintiff contends that ALJ Scruton was required to make specific findings under SSR 96-8p and conduct a function-by-function analysis. ECF No. 17, p. 22. ALJ Scruton's RFC assessment is very cursory and does not

McGuire v. O'Malley, Case No. 1:23CV106-AW-MAF

comply with SSR 96-8p.   The RFC findings placing Plaintiff at a sedentary exertional level prior to November 19, 2020, are deficient and not supported by substantial evidence.   ALJ Scruton failed to build a logical bridge between the evidence and his RFC findings, and his decision lacks an explanation as to how he arrived at his conclusion Plaintiff could perform work at the sedentary exertional level with frequent reaching, handling, fingering, and feeling prior to November 19, 2020. Id. at 23; Tr. 908. Plaintiff contends that the evidence of record establishes Plaintiff has been at a less than sedentary exertional level since her alleged onset date of disability of July 27, 2016, due to her ability to only occasionally use her arms and hands, her inability to maintain a static work posture, her need for excessive breaks, and her excessive rate of absenteeism.

ALJ Scruton found Plaintiff has multiple severe physical impairments and that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but never made specific findings regarding whether Plaintiff's impairments would cause her to experience episodes of pain necessitating breaks or absences from work and how often these would occur and the impact on her ability to perform work related activities. Plaintiff contends that ALJ Scruton was required to make such specific findings under SSR 96-8p and conduct a function-by-function

analysis. The evidence establishes Plaintiff's impairments cause her to experience episodes of pain that will take her off task at an unacceptable rate and prevent her from performing work at a substantial gainful level. ALJ Scruton failed to properly evaluate Plaintiff's fibromyalgia and its resulting symptoms and used an erroneous standard to evaluate her pain.

## PLAINTIFF'S ALLEGATIONS ARE SUPPORTED
## BY SUBSTANTIAL EVIDENCE

Plaintiff contends that ALJ Scruton's determination that Plaintiff's allegations are inconsistent with the evidence of record is itself not supported by substantial evidence. ECF No. 17, p. 23; Tr. 913. Plaintiff believes that ALJ Scruton failed to build a logical bridge between the evidence and his conclusion that Plaintiff's allegations are not fully supported.

ALJ Scruton found that because Plaintiff is able to use a checkbook, bathe and dress herself, read and watch television, and perform a variety of chores, including folding clothes and cleaning the litter box, plaintiff's allegations of disability are not fully supported. Id. at 24; Tr. 906-907; 913; 917.  In making this assessment, Plaintiff suggests ALJ Scruton "cherry-picks" the evidence and ignores evidence contradictory to his assessment.

In an October 12, 2016, function report, Plaintiff stated that when her husband is home, he takes care of her pets so she can rest, and that she tries to help with household chores by folding some laundry and cleaning the

litter box, but that her husband does all of the other household chores. Tr. 234.   In a May 16, 2020, function report, Plaintiff stated she had to lie down during the day due to pain and fatigue (Tr. 1363), that when she tries to do any household chores she has to stop and take breaks, and that she requires encouragement and physical help to complete the chores. Tr. 1365. Plaintiff also stated she cannot sit or stand very long due to pain and fatigue. Tr. 1363.   Plaintiff testified she has difficulty sitting or standing, has to lie down during the day due to pain or fatigue, and has difficulty using her arms and hands. Tr. 67; 69; 71-74; 951-52; 954-56; 957-59.   Plaintiff believes the evidence confirms that Plaintiff receives assistance from others and only engages in limited activities on an intermittent basis. Tr. 233-34; 236; 1365.

ALJ Scruton failed to acknowledge the limited extent to which Plaintiff performed the referenced activities and failed to explain how these limited, intermittent activities establish Plaintiff can engage in substantial, gainful activity on a sustained basis. Tr. 906-07; 913; 917. An ALJ's assessment of a claimant's allegations is not to be given deferential weight if it is not supported by substantial evidence. In this case, ALJ Scruton's decision regarding Plaintiff's allegations is not supported by substantial evidence and should be rejected as insufficient as he failed to identify specific portions of the record that undermine Plaintiff's allegations. Simon v. Comm'r, 7 F.4th

1094, 1110 (11th Cir. 2021).   ALJ Scruton does not provide an explanation as to how the evidence he cited actually supports his determination that the RFC is an accurate portrayal of the most Plaintiff can do on a regular and continuing basis. Plaintiff reiterates that the activities referenced by ALJ Scruton are not performed on a sustained basis commiserate with substantial gainful work activity, and, consequently, do not establish Plaintiff can sustain a typical 40-hour workweek. In addition, the activities are either performed intermittently and at Plaintiff's own pace or with assistance from others.

ALJ Scruton failed to qualify the extent to which Plaintiff performed the activities. "Participation in everyday activities with short duration, such as housework or fishing, disqualifies a claimant from disability." Delgado v. Comm'r Soc. Sec., 2021 WL 4099237, *6 (S.D. Fla. September 9, 2021) citing Lewis, 125 F.3d at 1441; see also Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985). The ability to cook meals, visit with family, and attend appointments does not provide good cause to discount a claimant's allegations of disability.   Delgado, 2021 WL 4099237 at *6.

Plaintiff argues that the limited, intermittent activities cited by ALJ Scruton are not comparable to having the ability to perform work activities full time and the ALJ does not explain how these activities establish Plaintiff

can perform substantial gainful work activities on a sustained basis over the course of an eight-hour workday. Id. 26; Tr. 906-07; 913; 917.

## VI.    COMMISSIONER'S RESPONSE

### SUBSTANTIAL EVIDENCE SUPPORTS THE RFC

The Commissioner contends that ALJ Scruton properly evaluated Plaintiff's mental health and physical impairments and properly accommodated for them in the RFC.

1.    Plaintiff's Physical Impairments    In articulating Plaintiff's RFC with respect to her physical impairments, ALJ Scruton analyzed the records relating to her severe impairments of fibromyalgia, obesity, and degenerative disc disease with radiculopathy.   Tr. 903; 909-12. ALJ Scruton noted that Plaintiff consistently complained of pain, but during an August 1, 2017, chiropractic visit, her physical examination was largely within normal limits. Tr. 909-10; 826-27. Similarly, although Plaintiff was assessed in October 2017 as having radiculopathy, and an examination noted tenderness on her lumbar spine, she had a mostly normal range of motion and 5/5 motor functioning in her extremities but some sensory deficits. Tr. 910; 781.

ALJ Scruton added that Plaintiff continued to complain of pain throughout 2017 and 2018.   Tr. 910. However, her physical examination reports remained generally unremarkable, and her treatment remained

43

conservative and limited to chiropractic care following her November 2017 microdiscectomy in which Plaintiff was noted to be doing great afterward. Tr. 910; 822-36; 847-49; 851-53; 858-64. Indeed, the chiropractic reports indicated improvement on several occasions (Tr. 910; 828-32; 858-59), and Plaintiff's examinations remained largely normal through January 2018. Tr. 909-10; 768.

Plaintiff had a car accident in May 2020 (Tr. 910; 1547); following the accident Plaintiff went to a neurologist with complaints of neck pain. Tr. 910; 1685. Imaging, however, showed mostly mild results, and the examination revealed Plaintiff had normal motor strength, sensation, and reflexes, but some reduced range of motion in the neck and spasms. Tr. 910; 1543; 1545; 1686. Subsequent examinations also routinely showed normal strength, sensation, and reflexes and full range of motion but some spasm and pain in Plaintiff's spine.   Tr. 910; 1683. Finally, ALJ Scruton noted that during a June 2020 neurology visit, Plaintiff reported she was doing well with her headaches, and she had an improved mood. Tr. 911; 1828. She likewise reported in September 2020 that she was doing well on her medication, and her physical examination was unremarkable. Tr. 911; 1587; 1589-90.

ALJ Scruton also discussed the opinion evidence relating to Plaintiff's physical impairments. Tr. 914. Dr. Tulou and Dr. Buston assessed Plaintiff

44

could perform a range of light work with frequent postural activities but only occasional climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds. Tr. 914; 95-96; 107-08. Likewise, Dr. Duckwall also assessed Plaintiff could perform a range of light work.   Tr. 914; 1503-05; 1072-74. ALJ Scruton gave these opinions some weight. Tr. 915.

After discussing this evidence in detail, ALJ Scruton explained that given the "documented evidence of back and lower extremity pain," which Plaintiff's obesity exacerbated, Plaintiff could perform at most sedentary work, with the further limitations that she could never climb ramps, stairs, stoop, kneel, or crouch; and further limited her only to occasional exposure to hazards and vibration. Tr. 911-12.   This was sufficient to comply with SSR 96-8p. See Castel, 355 F. App'x at 263; Freeman, 220 F. App'x at 960.

2.    Plaintiff's Mental Health    Plaintiff complained of depression, panic attacks, and difficulties in interacting with others and in handling complex tasks (Tr. 912), and ALJ Scruton found at step two that Plaintiff had the severe impairment of depression. ECF No. 20, p. 8.; Tr. 903. However, despite that recognition, ALJ Scruton found that the record did not support the severe limitations she alleged.   Id. Plaintiff's treatment records with Dr. Mundy confirm that Plaintiff's mental status evaluation reports were largely within normal limits.   Tr. 912; 807-12; 840-41; 1871-74. In fact, the notes

45

further indicated that Plaintiff's mental symptoms stemmed largely from marital problems with her then husband and her physical issues, rather than a long-standing mental health condition. Id. Plaintiff's records documented improvement with treatment because of counseling, and there was no evidence of any deterioration.   Tr. 912.   Indeed, ALJ Scruton noted that on January 23, 2018, and April 11, 2018, Plaintiff reported improved communication with her husband and an improved desire to accomplish household tasks. Tr. 912; 808; 840. There was no recommendation for alternative treatment other than counseling and engagement in mindful practice and relaxation breathing, which suggested her condition was not as severe as alleged.   Tr. 912; 776; 808-12; 840-41; 1871-74. These findings were supported by Plaintiff's other providers, who also routinely recorded normal mental status findings. Tr. 912; 1433; 1436; 1443; 1448; 1475; 1585; 1596; 1686; 1753; 1841.

ALJ Scruton separately analyzed the opinion evidence, including the opinions of Drs. Fuchs and Mundy (Tr. 915-17), and gave some weight to the opinions of the state agency medical consultants, Dr. Walter and Dr. Kadakkal, who assessed that Plaintiff had, at most, mild mental limitations. Tr. 93; 914-15; 1051; 1070-71.

46

The Commissioner notes that even though the evidence suggested Plaintiff's mental impairments were not as severe as she alleged, ALJ Scruton explained he was still giving Plaintiff the benefit of the doubt and incorporating mental limitations into the RFC finding.    ECF No. 20, p. 9; Tr. 912. ALJ Scruton stated that "considering the cumulative effects of [Plaintiff's] mental impairment, including her difficulty with social interaction, handling complex tasks, and mild to moderate difficulty with her insight and judgment in 2017/2018, the undersigned limits [Plaintiff] to occasional interaction with others." Id. ALJ Scruton added that restriction to accommodate Plaintiff's limitations with concentration, persistence, and pace.    Plaintiff would also be restricted to following short, simple instructions and completing simple, routine tasks; would also require ordinarily scheduled breaks, while being expected to fall off-task up to five percent of the workday; and, would be limited to work environments presenting only routine situations and changes Id.

Despite this extensive discussion of the evidence relating to Plaintiff's mental impairments and the explanation of why ALJ Scruton included several mental limitations into the RFC finding, Plaintiff argues the ALJ failed to comply with SSR 96-8p.    ECF No. 17, pp. 14-17). Plaintiff claims that SSR 96-8p requires an even more detailed and explicit function-by-function

47

analysis of her mental impairments.   Id. But the Eleventh Circuit has not applied the demanding standard Plaintiff proposes. For instance, even where an "ALJ could have been more specific and explicit in his findings," the Court found no error so long as the ALJ considered all the evidence and found it did not support the level of disability alleged by the claimant. Freeman v. Barnhart, 220 F. App'x 957, 960 (11th Cir. 2007). SSR 96-8p does not independently require an ALJ to refer to every piece of evidence. See Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 263 (11th Cir. 2009) (rejecting claimant's argument that ALJ did not perform a function-by-function analysis). Here, SSR 96-8p did not require the ALJ to do anything more. ALJ Scruton analyzed in detail the evidence relating to Plaintiff's mental impairments, and his careful analysis reflects he explicitly included several limitations to account for them. See Freeman, 220 F. App'x at 960; see also Carson v. Comm'r of Soc. Sec., 440 F. App'x 863, 864 (11th Cir. 2011) (holding that simply because an ALJ chose not to adopt further limitations does not mean the ALJ failed to comply with SSR 96-8p). Plaintiff's reliance of SSR 96-8p is thus misplaced.

Plaintiff also suggests ALJ Scruton was required to build a "logical bridge" between the evidence and the RFC finding.   ECF No. 17, 16-17; 22-23. Once again, the law does not support this burden proposed by Plaintiff.

48

The "logical bridge" is just another way to describe the substantial evidence standard. The Seventh Circuit held "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard.'" See Brumbaugh v. Saul, 850 F. App'x 973, 977 (7th Cir. 2021). Moreover, the Eleventh Circuit recently rejected an argument that an ALJ needed to link evidence to the RFC finding and explained it only requires the ALJ state with some clarity the reasons for the decision. Sturdivant v. Soc. Sec. Admin., Comm'r, No. 22-13952, 2023 WL 3526609, *4 (11th Cir. May 18, 2023). Thus, all the ALJ needed to do was to support his finding with substantial evidence, and he met that burden.

### 3.   Opinion Evidence

The Commissioner also details how ALJ Scruton reviewed and considered the opinion evidence offered by Plaintiff's mental health providers (Drs. Fuchs and Mundy).   ECF No. 20, pp. 14-24.    The Commissioner contends that ALJ Scruton afforded appropriate weight to these opinions in light of the entirety of the record of the treatment by these professionals and the record as a whole.

*Dr. Fuchs*:   The Commissioner discusses, in detail, Dr. Fuchs' opinion as reflected in a five page "Neuropsychological Evaluation" provided following a June 27, 2017, visit. Tr. 461-65.   Dr. Fuchs noted Plaintiff

complained of memory issues and reported shaking in her hands, a recent fall, sometimes blurry vision, and pain behind her left eye and in her hands, arms, and legs. Tr. 461. Plaintiff added reports of depression and poor sleep quality. Tr. 462. Plaintiff told Dr. Fuchs that she drove herself to the appointment; that her problems with driving were more physical than cognitive; that she cleaned her home and took care of her own self-care; and she enjoyed reading and spending time with her pets. Id.

Ultimately, Dr. Fuchs opined that Plaintiff's test results suggested she had average baseline intellectual abilities, and she exhibited no significant cognitive deficits during the evaluation. Tr. 464. Dr. Fuchs noted that although Plaintiff struggled somewhat with consistency on a measure of attention, she showed good sustained and selective attention on an alternative task. Id. Her processing speed was within normal limits, and she demonstrated intact abilities in language, visual construction, problem-solving, and learning and memorizing verbal materials. Id. She struggled somewhat with visual materials, but she was able to retain and recognize what she learned. Id. She assessed at least a mild level of depression, but Dr. Fuchs expressed no concerns regarding her ability to drive or manage her activities of daily living. Tr. 464-65. Dr. Fuchs ultimately concluded that "[i]n terms of her ability to return to work, it appears that she has the cognitive

50

capacity to function in the work force. However, other factors such as mood issues or fatigue could compromise her ability to do so." Tr. 465.

ALJ Scruton gave Dr. Fuchs' opinion some weight.  Tr. 915-16. Although Dr. Fuchs was not a treating physician, she was a specialist in the area of her opinion and had the opportunity to perform a thorough examination of Plaintiff.  Tr. 915. ALJ Scruton accurately summarized Dr. Fuchs' findings and concluded "her opinion is well supported and is generally consistent with the overall record" Tr. 916. The ALJ, however, explained he did not afford more weight to the opinion because it was vague with respect to specific functional limitations, and also relied somewhat on Plaintiff's physical impairments and limitations, which were beyond the scope of her specialty.  Id. Portions of her opinions were also based on Plaintiff's subjective complaints rather than any objective findings.  Id.

The Commissioner contends that substantial evidence supports ALJ Scruton's finding.  As a one-time examiner, Dr. Fuchs' opinion was not entitled to great weight. Tr. 915. See Crawford, 363 F.3d at 1160 (holding that the opinion of a one-time examiner was not entitled to great weight); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (same). Moreover, Dr. Fuchs' opinion that factors such as mood or fatigue could compromise Plaintiff's ability to work was vague in that it lacked details explaining any

actual functional limitations Plaintiff's impairments might cause. Tr. 916; 464-65. This was an appropriate reason to afford the opinion only some weight. See, e.g., Sanders v. Soc. Sec. Admin., Comm'r, 854 F. App'x 311, 314 (11th Cir. 2021) (holding a vague opinion is an appropriate reason to discount even a treating physician's opinion). Finally, Dr. Fuchs relied upon Plaintiff's representations of her physical limitations and depression. Id. Indeed, Dr. Fuchs noted she allowed Plaintiff to self-report her symptoms of depression Tr. 464. This aspect of the opinion deserved less weight because it was not based on the record or Dr. Fuchs' own observations.   Tr. 916. See, e.g., Tredik v. Comm'r of Soc. Sec. Admin., 826 F. App'x 840, 847 (11th Cir. 2020) (holding ALJ properly discounted opinion that was based primarily on the claimant's subjective complaints). Regardless, ALJ Scruton recognized that because Dr. Fuchs was a specialist and provided a detailed report, the opinion was otherwise still entitled to some weight.   Tr. 915-16. See 20 C.F.R. §§ 404.1527(c)(3), (5), 416.927(c)(3), (5).

Plaintiff argues that ALJ Scruton did not address every single aspect of Dr. Fuchs' opinion.   ECF No. 17, p. 18. Once again, however, that is not the law. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); see also Newberry v. Comm'r, Soc. Sec. Admin., 572 F.

App'x 671, 672 (11th Cir. 2014) (relying on Dyer in declining to fault ALJ for not discussing a physician's finding that claimant would need to lie down at times throughout the workday). Furthermore, to the extent Dr. Fuchs' opinion was consistent with Dr. Mundy's opinion, that consistency shows no lack of substantial evidence because, as explained below, ALJ Scruton properly discounted Dr. Mundy's opinion. Accordingly, the Commissioner argues that Plaintiff's arguments are unavailing.

*Dr. Mundy*:  Dr. Mundy began treating Plaintiff on August 31, 2017. Tr. 776. Plaintiff attended six sessions with Dr. Mundy, but also canceled several times.   Plaintiff had established multiple goals she sought to achieve through biweekly treatment. Id. Dr. Mundy noted Plaintiff was engaged, motivated, and invested in her treatment related to depression and anxiety when she did appear. Id.

Dr. Mundy summarized that Plaintiff experienced ongoing medical and psychological concerns throughout her treatment that negatively impacted her psychological status, and that she appeared to be physically and psychologically compromised to the point that, at times, she was unable to leave her home. Id. She added that "[g]iven her ongoing struggles with her neurological and spinal pain, it is likely that her physical and emotional statuses will be further impacted and the likelihood of her engaging in a

53

consistent pattern of employment is highly unlikely at this time." Id.

ALJ Scruton gave little weight to Dr. Mundy's opinion. Tr. 916. First, Dr. Mundy failed to support her opinion with reference to the examination findings and treatment notes. Tr. 916. Additionally, the opinion was inconsistent with the overall record, which showed minimal mental health treatment. Tr. 917. Although Plaintiff received a prescription for Cymbalta, it appears the prescription was intended to target her fibromyalgia more than her mental health. Id. Also, Plaintiff did not require any emergency care or inpatient hospitalization for mental impairments, and it did not appear as if Plaintiff established care with any providers after she stopped seeing Dr. Mundy in the summer of 2018. Tr. 916-17.

The Commissioner contends that substantial evidence supports the ALJ's finding. First, Dr. Mundy's opinion conflicted with her own records Tr. 916. See Hargress, 883 F.3d at 1305 (noting there is good cause to discount a treating physician's opinion when her opinion conflicts with her own records). Before writing the February 25, 2018, letter, Dr. Mundy had only conducted a few sessions with Plaintiff over the course of six months. Tr. 916; 776; 807-08; 810-12. Furthermore, in those sessions, ALJ Scruton emphasized that Dr. Mundy recorded Plaintiff's improvement. Tr. 916. For instance, ALJ Scruton noted that in Plaintiff's first session, Dr. Mundy

54

observed she was tense and had expansive affect, pressured speech, tangential thought process, and a depressed and anxious mood. Tr. 916; 812. However, in her meeting the next month, Dr. Mundy recorded that Plaintiff improved. Tr. 916; 811. Although she observed Plaintiff was anxious, she was no longer depressed, her speech was normal, and she had an appropriate affect. Tr. 916; 811. By Plaintiff's fourth visit, Dr. Mundy observed Plaintiff was in a euthymic mood and the only abnormality she noted was that Plaintiff had minimal insight and judgment Tr. 916; 808. Plaintiff also reported improvements in her relationship with her husband. Tr. 916; 808. Accordingly, as the ALJ emphasized, Dr. Mundy's records documenting improvement after a few sessions conflicted with her opinion of severe limitations Tr. 916-17.

Additionally, ALJ Scruton also reasonably discounted Dr. Mundy's opinion because it conflicted with other portions of her record. Tr. 916-17. See Hargress, 883 F.3d at 1302 (noting that the evidence supporting a contrary finding provides a good reason to discount even a treating physician's opinion). Plaintiff did not have any records documenting longstanding treatment for mental health issues, let alone any evidence that she required emergency care or inpatient treatment. Id. Likewise, Dr. Mundy treated Plaintiff through counseling and techniques such as mindful practice

55

and relaxation breathing rather than more aggressive means. Tr. 776; 807-12.   While the record indicated Plaintiff took Cymbalta, it was primarily for her fibromyalgia. Tr. 916-17; 1496-97. Plaintiff's infrequent and conservative treatment conflicted with Dr. Mundy's opinion of severe limitations. See, e.g., Peters v. Astrue, 232 F. App'x 866, 871 (11th Cir. 2007) (providing that a claimant's history of conservative treatment is a valid reason to discount the opinion of a treating physician); see also Horowitz v. Comm'r of Soc. Sec., 688 F. App'x 855, 861-62 (11th Cir. 2017) (providing that a physician's own conservative treatment of the claimant can undermine any opinion by that physician that the claimant had debilitating impairments).

Despite the effort by ALJ Scruton to explain there was good cause to give Dr. Mundy's opinion little weight, Plaintiff suggests the evidence supports giving the opinion more weight. ECF No. 17, 19-20. Plaintiff's argument in that regard is simply an invitation to reweigh the evidence, which would not be appropriate.   See Sims v. Comm'r of Soc. Sec., 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). Accordingly, according to the Commissioner, Plaintiff's arguments show no lack of substantial evidence to support ALJ

Scruton's review of the opinion testimony.  Furthermore, Plaintiff has not shown any harm by the inclusion of further limitations in the RFC finding, and thus, her argument fails for an additional reason. See Santos v. Soc. Sec. Admin., Comm'r, 731 F. App'x 848, 852 (11th Cir. 2018) (noting claimants have the burden of proving their RFC); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) ("It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC.").

### SUBSTANTIAL EVIDENCE SUPPORTS ALJ SCRUTON'S EVALUATION OF SUBJECTIVE COMPLAINTS

Symptom assessments are the province of the ALJ. ECF No. 20, p. 25; Moore, 405 F.3d at 1212. If the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her symptoms and their effect on her ability to work must be evaluated. See 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); see also SSR 16-3p, 2017 WL 5180304, at *3-8 (Oct. 25, 2017) (describing the two-step process).

According to the Commissioner, when evaluating a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, ALJs consider all the evidence, objective and subjective. ECF No. 20, p. 25; 20 C.F.R. §§ 404.1529, 416.929. ALJs may consider the nature of a claimant's symptoms, the effectiveness of medication, a

claimant's treatment, a claimant's daily activities, measures a claimant takes to relieve symptoms, and any conflicts between a claimant's statements and other evidence. See id. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

Here, ALJ Scruton properly considered Plaintiff's subjective complaints and explained his reasoning for finding Plaintiff's statements not wholly supportive of a finding of disability. Tr. 908-17. Specifically, ALJ Scruton found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects were not entirely consistent with the evidence. Tr. 913. In doing so, ALJ Scruton reviewed Plaintiff's complaints in comparison to the evidence and highlighted the inconsistencies Tr. 909-14. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence").

First, ALJ Scruton summarized Plaintiff's statements.  Tr. 909; §§ 404.1529(a), 416.929(a) ("We will consider all your statements about your symptoms"). ALJ Scruton detailed that Plaintiff testified she was unable to work due to fibromyalgia and she had back pain, fatigue, and numbness in her hands, arms, and feet. Id. She also alleged she experienced migraines, depression, and memory and cognitive issues; had crying spells and panic attacks; and, she reported recent weight gain.  Id. ALJ Scruton noted that at

the second hearing Plaintiff testified to continued pain and difficulties with using her hands.  Id. She said she avoided people and mostly stayed at home.  Id.

Juxtaposed to this, ALJ Scruton detailed the medical evidence, noting Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the medical evidence. Tr. 909-13. See 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) (noting the Commissioner will consider all the available evidence from medical providers). As detailed above, ALJ Scruton analyzed the evidence relating to Plaintiff's physical impairments and noted that even though Plaintiff consistently complained of pain, her providers routinely observed mostly normal examination findings. Tr. 909-10; 781; 826-27. Although Plaintiff underwent a microdiscectomy in November 2017, her records indicated she did great afterward. Tr. 910; 847-49; 851-53. The chiropractic reports further indicated improvement on several occasions. Tr. 910; 828-32; 858-59. Plaintiff's examinations remained largely normal through January 2018. Tr. 909-10; Tr. 768.

ALJ Scruton also referenced that Plaintiff was involved in a motor vehicle accident in May 2020. Tr. 910; 1547. Imaging, however, showed mostly mild results, and the examination revealed Plaintiff had normal motor strength, sensation, and reflexes, but some reduced range of motion in the

59

neck and spasms. Tr. 910; 1543; 1545; 1686. Subsequent examinations also routinely showed normal strength, sensation, and reflexes and full range of motion, but some spasms and pain in Plaintiff's spine. Tr. 910; 1683. Finally, ALJ Scruton noted Plaintiff reported in September 2020 that she was doing well on her fibromyalgia medication, and her physical examination was unremarkable. Tr. 911; 1587; 1589-90. Thus, in discounting Plaintiff's allegations of severe physical limitations, ALJ Scruton properly relied upon the evidence in her treatment records that conflicted with her subjective complaints. See 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

ALJ Scruton also discussed the opinion evidence, including the opinions from Drs. Tulou, Buston, and Duckwall, all of whom assessed Plaintiff could perform a range of light work. Tr. 914; 95-96; 107-08; 1503-05; 1072-74. See 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("We also consider the medical opinions"); see also §§ 404.1513a(b)(1), 416.913a(b)(1) (noting the federal and state agency consultants are highly qualified and experts in Social Security disability evaluation). These opinions that Plaintiff could work directly conflicted with her allegations of severe impairments. See Laurey v. Comm'r of Soc. Sec., 632 F. App'x 978, 983-84, 989 (11th Cir. 2015) (observing that state agency physician assessments supported ALJ's subjective complaint evaluation).

ALJ Scruton also considered the effectiveness of Plaintiff's treatment, including her reports that medication controlled her fibromyalgia symptoms. Tr. 913; 1587-90. See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (providing for the consideration of type, dosage, and effectiveness of medication). Moreover, ALJ Scruton appropriately noted that Plaintiff's treatment was largely conservative in that it consisted mostly of medication, chiropractic care, and physical therapy. Tr. 910; See 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (providing that a relevant factor to consider includes the treatment the claimant receives); see also Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding a claimant's conservative treatment supported decision to discount subjective complaints).

The Commissioner notes that despite all of this conflicting evidence, ALJ Scruton still partially credited Plaintiff's statements by limiting her to a reduced range of sedentary work (with several postural and environmental limitations), rather than light, medium, heavy, or very heavy work. ECF No. 20, p. 30; Tr. 21; 20 C.F.R. §§ 404.1567(b), 416.967(b) (listing the physical exertional requirements); Robinson v. Acting Comm'r of Soc. Sec., 766 F. App'x 811, 816 (11th Cir. 2019) (affirming conclusion to credit partially the plaintiff's testimony). ALJ Scruton explained that Plaintiff "may experience

61

some degree of pain and discomfort. However, mild to moderate pain or discomfort is not, in itself, incompatible with the performance of sustained work activity." ECF No. 20, p. 30; Tr. 913. ALJ Scruton added that even though Plaintiff "has impairments[] that are reasonably expected to produce the type of pain or discomfort she alleges, her complaints suggest a greater severity of symptoms than can be shown by the medical evidence." Tr. 913.

Plaintiff suggests the ALJ erred in evaluating her subjective complaints relating to fibromyalgia, arguing ALJ Scruton increased her burden of proof by requiring she present evidence beyond her subjective complaints Tr. 21-22. The Commissioner agrees that ALJ Scruton found fibromyalgia was a severe impairment (Tr. 903, Finding No. 3), but contends that subjective complaints of pain resulting from fibromyalgia, are not "special" and that the regular rules for evaluating subjective complaints of pain still apply. ECF No. 20, p. 31.

"The mere fact that the ALJ determined that [Plaintiff's] fibromyalgia was a 'severe impairment,' . . . does not mean that the ALJ was required to attribute severe pain to her fibromyalgia." Laurey, 632 F. App'x at 988 n.5; see also Klaes v. Comm'r of Soc. Sec., 719 F. App'x 893, 897 (11th Cir. 2017) (stating "even if fibromyalgia explained Klaes's pain, that alone does not compel a finding of disability"). Thus, pursuant to SSR 12-2p, ALJ

62

Scruton correctly evaluated the intensity and persistence of the alleged pain. Tr. 912-13; SSR 12-2p, 2012 WL 3104869, at *5 (2012) ("Evaluation of Fibromyalgia"). Pursuant to that Ruling, if the objective medical evidence does not substantiate a claimant's statements, the Commissioner will consider all the evidence in the case record, including daily activities, medications or other treatments, the nature and frequency of attempts to obtain treatment, and statements by other people about the symptoms. Id. at *5. Thus, despite Plaintiff's argument to the contrary, a claimant's subjective complaints regarding fibromyalgia are not simply accepted as true automatically. Id. Moreover, ALJ Scruton explicitly stated in the decision that "failure of the objective evidence to support the fibromyalgia symptoms is not outcome determinative." Tr. 913. ALJ Scruton provided substantial evidence to support the finding that Plaintiff's impairments were not as severe as she alleged.

Finally, Plaintiff argues the ALJ inappropriately relied on her activities of daily living to discount her subjective complaints of pain.   ECF No. 17, pp. 24-26. ALJ Scruton made no such finding. Plaintiff may be is referencing the ALJ's step-two analysis of the Paragraph B criteria in making this argument Tr. 905-08; 20 C.F.R. §§ 404.1520a(a), 416.920a(a). That analysis, however, is separate from the later finding of her RFC and evaluation of her

63

subjective complaints. §§ 404.1520(a)(4), 416.920(a)(4) (listing the steps of the disability evaluation process). Regardless, even if the ALJ did consider her activities of daily living as part of the subjective complaints analysis, it still would show no error. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (providing for the consideration of daily activities); Majkut v. Comm'r of Soc. Sec., 394 F. App'x 660, 663 (11th Cir. 2010).

According to the Commissioner, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011). Because ALJ Scruton clearly articulated the several inconsistencies between Plaintiff's testimony and the record, substantial evidence supports his findings. See Mitchell, 771 F.3d at 782 (noting courts will not disturb a clearly articulated finding supported by substantial evidence).   ECF No. 20, pp. 32-33.

## VII.  Legal Analysis

ALJ Scruton provided an exhaustive and comprehensive review of Plaintiff's medical record. This review demonstrates that he considered the entire record. The question for this Court is whether ALJ Scruton's decision is supported by substantial evidence.   Because this Court finds substantial evidence does support that decision, the Order should be affirmed.

## ALJ SCRUTON PROPERLY EVALUATED PLAINTIFF'S
## MENTAL HEALTH IMPAIRMENTS AND ACCOUNTED
## FOR THEM IN THE RFC

ALJ Scruton acknowledged that Plaintiff suffers from depression, a severe mental health impairment.   Tr. 903.   Neither party contests that finding.   The dispute here is whether the ALJ properly considered the impact of that impairment in crafting Plaintiff's RFC for the period between July 27, 2016, and November 18, 2020.

ALJ Scruton properly considered Plaintiff's entire longitudinal record, ultimately concluding that while Plaintiff suffered from depression, the evidence here confirms that Plaintiff's symptoms were not as bad as alleged by Plaintiff, that her condition was treatable, and that she improved with care when she sought and received the same. Supra, pp. 45-47; Tr. 916-17; 776; 807-12; 840; 1871; 1873-74. It is likely, under those circumstances, that her mental health condition may have improved or resolved itself had she consistently participated in her own care.

Arguably, Dr. Mundy's opinion regarding Plaintiff's ability to engage in a "consistent pattern of employment," and Dr. Fuchs' opinion that Plaintiff's "mood issues or fatigue could compromise her ability" to work were not proper opinions by a treating or examining physician which would be entitled to controlling weight.   An administrative law judge is not required to agree

with the statement of a medical source that a claimant is "disabled" or "unable to work." Walker v. Comm'r of Soc. Sec., 987 F.3d 1333, 1338-39 (11th Cir. 2021); 20 C.F.R. § 404.1527(d)(1). Whether a claimant meets the statutory definition of disability is an administrative finding, not a medical opinion. That administrative finding is "reserved to the Commissioner." Id. § 404.1527(d). And because the Commissioner has delegated his authority to make the finding at the hearing level to an ALJ, the finding is effectively reserved to the ALJ. Id. § 404.1546(c); see also S.S.R. 96-5p (July 2, 1996) (giving such opinions controlling weight would "confer upon the treating source the authority to make" disability determinations).   Accordingly, Dr. Mundy's and Dr. Fuchs' opinions in that regard were not entitled to be afforded any weight.

But even if such opinions were proper, ALJ Scruton had just cause for conferring less or no weight to them because of the inconsistencies he noted within Drs. Mundy's and Fuchs' own records, as well as the inconsistency with the remainder of Plaintiff's mental health reports from other providers. ALJ Scruton described, in detail, the inconsistencies between Dr. Mundy's vague conclusion regarding Plaintiff's inability to work – including the lack of any noted objective abnormality in Dr. Mundy's own records, the lack of a history of treatment for mental health conditions, the improvements resulting from her limited counseling, and the lack of care beyond the limited

counseling services provided by Dr. Mundy.   Tr. 916-917; <u>supra</u>, pp. 45-47, 54-56.   Plaintiff's condition was treated with conservative methods and there was improvement in that condition while she was being treated, suggesting that Plaintiff's condition was not disabling.   <u>See Peters</u>, 232 F. App'x at 871 (claimant's history of conservative treatment is a valid reason to discount the opinion of a treating physician); <u>Horowitz</u>, 688 F. App'x at 861-62 (physician's own conservative treatment of the claimant can undermine any opinion by that physician that the claimant had debilitating impairments).   The most striking example of this inconsistency is Plaintiff's contention that she was unable to pay attention for more than a minimal amount of time – somewhere between 5 minutes and 20 minutes.   Tr. 237 (can pay attention for 20 minutes; trouble finishing what she starts); 1368 (pays attention for 5 minutes).   Yet, Plaintiff was able to focus and participate during both of her disability hearings.   Tr. 907. (which were approximately 40 minutes and 60 minutes long). Those facts are inconsistent. ALJ Scruton's conclusion that the impacts of Plaintiff's mental health impairments – including her ability to concentrate and stay engaged during the workday – were not as great as proposed by Plaintiff or as suggested by Drs. Mundy and Fuchs.   His finding in that regard is supported by substantial evidence and should be affirmed.

Moreover, Plaintiff's depression and mental health challenges resulted, at least in part, from her situation – a challenging relationship with her husband, financial problems, an inability to work, weight issues, and the death of a pet – rather than from a long-standing mental health condition. Tr. 840; 1871; 1873-74. Being sad because of a situation or circumstance is not the same as having a disabling condition.   Circumstances change, and moods do as well.   Plaintiff's weight went up and down. Tr. 823; 911. She divorced and remarried.   Tr. 960-61.   She lost and obtained new pets. Tr. 1831 (6 cats and 2 dogs). Plaintiff's condition may have been debilitating at times, but Plaintiff's work-related challenges were exacerbated by matters other than a disabling mental health condition.   Merely being periodically sad is not enough to sustain a finding of disability, especially where the sources of that sadness were temporary issues.

Plaintiff's records confirm that her mental health challenges were alleviated, or at least improved, when her challenging situations changed. Situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039–40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). Additionally, the failure to attend counseling

68

and a claimant's daily activities can support a conclusion that depression is situational due to temporary circumstances. Id. at 1039. ALJ Scruton properly considered the source of Plaintiff's depression and his decision in this regard is supported by substantial evidence.

In any event, the RFC developed by ALJ Scruton actually gives Plaintiff the benefit of the doubt and credits Plaintiff's alleged mental health restraints beyond the restrictions suggested by the state consultants. Tr. 93; 1051; 1070-71. ALJ Scruton actually increased the protections afforded to her beyond those which would have been afforded under the diagnoses of the state consultants who reviewed her case. Supra, pp. 14-17, 22-27. Plaintiff's RFC accounted for the impact of Plaintiff's mental health impairments, providing her with sufficient protections so that she could still be gainfully employed at any of the identified positions despite her complained of mental health impairments. Id. The decision of ALJ Scruton that Plaintiff was not disabled prior to November 19, 2020 because of her mental health impairments should be affirmed.

## ALJ SCRUTON PROPERLY CONSIDERED AND ACCOUNTED FOR PLAINTIFF'S FIBROMYALGIA IN THE RFC

At the outset, the Court notes that the Eleventh Circuit has recognized fibromyalgia is a unique condition that is often characterized by a lack of objective findings. See Moore, 405 F.3d at 1211 ("[Fibromyalgia]'s hallmark

is…a lack of objective evidence"); <u>Horowitz</u>, 688 F. App'x at 863) (alteration in original) ("Fibromyalgia 'often lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms.' ") (quoting <u>Moore</u>, 405 F.3d at 1211). The American College of Rheumatology has stated that fibromyalgia is both real and difficult to confirm. <u>See generally</u> Frederick Wolfe, *et al.*, <u>The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity</u>, 62 Arthritis Care & Research 600 (May 2010). An extensive body of case law pre-dates the effective date of SSR 12-2p relating to courts' treatment of social security disability claims based on fibromyalgia. <u>See</u> <u>Johnson v. Colvin</u>, No. 1:14cv149-WS/CAS, 2015 U.S. Dist. LEXIS 55388, at *31-38 (N.D. Fla. Mar. 25, 2015), <u>adopted</u>, 2015 U.S. Dist. LEXIS 55381 (N.D. Fla. Apr. 27, 2015), for a discussion of the legal standards in fibromyalgia cases pre-dating SSR 12-2p and a discussion of SSR 12-2p. The following is a brief explanation of SSR 12-2p derived from <u>Johnson</u>.

The Social Security Administration issued SSR 12-2p to assist factfinders in the evaluation of fibromyalgia. SSR 12-2p, 2012 SSR LEXIS 1 at *1. Social Security Ruling 12-2p "provides that once a person is determined to have fibromyalgia her statements about symptoms and functional limitations are to be evaluated according to the two-step process

70

set forth in SSR 96-7p, 1996 SSR LEXIS 4." <u>Tully v. Colvin</u>, 943 F. Supp. 2d 1157, 1165 (E.D. Wash. 2013); SSR 12-2p, 2012 SSR LEXIS 1 at *14. "These policies provide that '[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all [of the] evidence in the case record.'" <u>Id.</u> (quoting SSR 12-2P, 2012 SSR LEXIS 1); <u>see</u> <u>Evaluation of Fibromyalgia</u>, 77 Fed. Reg. 43,640 (July 25, 2012).

Even in the case of fibromyalgia, an ALJ does not err in rejecting a medical opinion where the ALJ "adequately articulate[s] specific justification" for discounting the opinion. <u>Moore</u>, 405 F.3d at 1212; <u>see</u> <u>also</u> <u>Peters</u>, 232 F. App'x at 872 (11th Cir. 2007) (finding that substantial evidence supported ALJ's decision that claimant's fibromyalgia was not disabling where the ALJ gave "specific, cogent, and credible reasons for discounting the conclusions of [claimant's] treating physicians"). And where the ALJ's decision to discount a medical opinion is not based on the lack of objective evidence in support thereof, but rather on inconsistencies in the evidence, the ALJ has not erred. <u>See</u> <u>Riley v. Astrue</u>, No. 6:11-cv-1437-ORL-JRK, 2012 WL 3522640, at *6 (M.D. Fla. Aug. 14, 2012) (rejecting claimant's argument relying on a diagnosis of fibromyalgia and noting that fibromyalgia typically does not result in any objective findings, where the ALJ's decision to discount the

treatment physician's opinion was not based on either a lack of objective findings or on the basis of claimant's subjective complaints of pain, but rather on the inconsistency with the other evidence of record).

ALJ Scruton was not required to merely accept the subjective complaints from Plaintiff that she was plagued by debilitating pain and other symptoms, which could preclude her from performing the jobs identified by the VE. A finding that a claimant suffers from fibromyalgia does not dictate that subjective complaints regarding the scope and existence of disabling pain must be excepted without further inquiry. Instead, ALJ Scruton was required to consider those complaints in light of other evidence of record and determine whether such subjective complaints were consistent with the other evidence of record.

In his Order, ALJ Scruton discussed the subjective complaints offered by Plaintiff and compared them with the objective evidence.  Tr. 908-14; pages 59-61 supra. The Eleventh Circuit has stated: "credibility determinations are the province of the ALJ." Moore, 405 F.3d at 1212 ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole"). The credibility of the claimant's testimony must be considered in determining if the underlying medical condition is of a severity, which can reasonably be expected to produce the

alleged pain. <u>Lamb v. Bowen</u>, 847 F.2d 698, 702 (11th Cir. 1988). Because ALJ Scruton did not credit subjective pain testimony where such testimony is critical, he was required to articulate specific reasons for questioning the claimant's credibility. <u>See</u> <u>Wilson</u>, 284 F.3d at 1225. There could be no argument here that ALJ Scruton failed to consider the entire record. Plaintiff does not point to any portion of the record that was ignored by ALJ Scruton.

Having reviewed that record and considered whether there was a consistency between the record and Plaintiff's subjective complaints, ALJ Scruton completed the task assigned to him in this case. Pages 19-23, <u>supra.</u> This Court will not – indeed cannot – merely substitute its opinion for that of ALJ Scruton and reach a contrary decision. "A clearly articulated finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." <u>Foote</u>, 67 F.3d at 1562.

Because ALJ Scruton reviewed the entire record, and that review is not inaccurate, Plaintiff cannot contend that the evidence at issue should be read differently or given different weight to justify a different decision. The question is not whether this Court would reach a different decision on the same evidence, or whether the evidence here actually preponderates a different result, but rather whether there is sufficient evidence here to confirm that substantial evidence supports ALJ Scruton's decision. <u>Phillips</u>, 357

F.3d at 1240 n.8 ("[i]f the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it"); see also Viverette v. Comm'r of Soc. Sec., 13 F.4th 1309, 1314 (11th Cir. 2021)   There is no doubt that ALJ Scruton's decision is so supported.

As a result, ALJ Scruton's RFC conditions based on Plaintiff's physical impairments are supported by substantial evidence and should be affirmed. Consistent with that RFC, there were jobs in the national economy which Plaintiff could perform even with her severe impairments.   ALJ Scruton's decision that Plaintiff was not disabled because of her physical impairments before November 19, 2020, should be affirmed.

## VII. CONCLUSION

For the reasons stated above, considering the record as a whole, the findings of the ALJ are based upon substantial evidence and the ALJ correctly applied the law. Accordingly, the undersigned **RECOMMENDS** that the decision of the Commissioner that Plaintiff has been disabled under sections 216(i), 223 (d) and 1614(a)(3)(A) of the Social Security Act, since November 19, 2020, but was not disabled prior to that date, should be **AFFIRMED.** Plaintiff's Motion for Summary Judgment in Support of the Complaint should be **DENIED**. The Clerk should be directed to close the file.

**DONE AND ORDERED** on August 12, 2024.

S/   Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**